**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**

THE ESTATE OF JLA,                          )
                                            )
            *Plaintiff,*                     )         **FIRST AMENDED VERIFIED**
                                            )         **COMPLAINT**
-vs-                                        )
                                            )         Civil Action No.:  5:22-cv-00287
COREY FIKE                                  )
                                            )
            Defendant.                       )

The Plaintiff, the Estate of JLA (hereinafter "Estate" or "Plaintiff"), by its attorneys,

Weisberg & Zukher, PLLC., David E. Zukher, Esq., complaining of the above-named Defendant,

alleges and states as follows:

## THE PARTIES

1.      JLA was an individual, now deceased (DOD:  March 4, 2021) (the "Deceased" or

"JLA"), and at all times mentioned in this Complaint, was a resident of the County of Onondaga,

State of New York, residing at:  4372 Apulia Road, Jamesville, NY 13078.

2.      On or about January 31, 2022, the Surrogate's Court of the State of New York,

County of Onondaga, issued Letters and a Certificate of Appointment of Administrator, naming

Mr. Loft Albahm, the natural father of the Deceased (hereinafter "Administrator"), as the

Administrator of the Estate of JLA.  True and correct copies of the Certificate of Appointment and

Letters are attached hereto as *Exhibit A*.  The Administrator resides at 4372 Apulia Road,

Jamesville, NY 13078.

3.      Upon information and belief, Defendant, Corey Fike (hereinafter "Trooper Fike"),

is an individual, and is now and at all times mentioned in this First Amended Verified Complaint

(hereinafter "Complaint"), a resident of Onondaga County, State of New York.  At all times

mentioned in this Complaint, Defendant, Trooper Fike, was employed as a law enforcement officer, to wit: a NYS Trooper, by the State of New York and, in doing the acts alleged in this Complaint, was acting within the course and scope of said employment.

4.        The basis for venue is the former residence of the Deceased and the residence of the Administrator, to wit: 4372 Apulia Road, Jamesville, NY 13078, County of Onondaga. Upon information and belief, the basis for venue is also the place where the injury to Decedent occurred, to wit: Jamesville, NY, County of Onondaga.

## THE FACTS

5.        Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 4 above of the Verified Complaint as if stated with particularity herein.

6.        On March 4, 2021, at 4372 Apulia Road, Jamesville, NY, County of Onondaga, Mrs. Carissa A. Albahm, the natural mother of JLA, a seventeen (17) year-old minor child (DOB: 4/30/03), called the St. Joseph's Hospital Health Center, the Comprehensive Psychiatric Emergency Program, to report that JLA was continuing to experience a mental health crisis.

7.        At approximately 12:24 p.m. of the same day, Mrs. Albahm called the police for assistance, so that her son could be brought in for medical treatment safely by the police, after JLA fled by car from a mobile crisis team dispatched by the St. Joseph's Hospital Health Center.

8.        Upon information and belief, three (3) different police agencies responded to the 911 call made by Mrs. Albahm, including, The DeWitt Police, Investigators Lucas Byron and Matthew Menard; the Onondaga County Sherriff's Office, Sergeant Amy Bollinger; and the NYS Police, including, Trooper Fike.

2

9.      JLA's family members warned dispatch and, specifically, Trooper Fike, that JLA had a history of mental illness, including a history of paranoid delusions; had/owned an airsoft/pellet gun, commonly referred to as a BB Gun; and had prior threatened suicide by "cop."

10.     Trooper Fike, despite being the first responding officer to the incident, involving a multiagency response, and the presence of a suspected firearm, thereby, escalating this incident from an emergency to a serious emergency, failed to properly implement, institute, and follow NYS Police Incident Command System ("ICS") operations in direct breach and violation of the applicable NYS State Police policies and procedures, including the NYS Police Members Manual and the NYS Police Filed Operations Guide ("FOG").

11.     Sergeant Brent, who was Trooper Fike's superior ranking officer, arrived on scene and upon his arrival, command from Trooper Fike should have been properly transferred to Sergeant Brent, which Trooper Fike failed to do. Trooper Fike failed to communicate; failed to properly implement, institute, and follow ICS operations in direct breach and violation of the applicable NYS State Police policies and procedures, including the NYS Police Members Manual and FOG.

12.     Less than an hour after arriving on the scene, at approximately, 1:25 p.m., during their pursuit of JLA, the aforementioned police officers, despite knowing or having reason to know that JLA only had a BB Gun, repeatedly discharged their service weapons and shot JLA multiple times all over his body, thereby, recklessly and negligently causing JLA's death.

13.     Defendant, as a police officer, had a duty to the general public, of whom JLA was a member, to follow his agency's own policies and procedures, to safeguard JLA's safety, and to act as a reasonable and prudent agency and police officers under the then prevailing circumstances.

3

Despite the same, Defendant breached his duty to JLA by carelessly, negligently, and/or recklessly actually and proximately causing JLA's death.

14.     Specifically, Defendant, among other negligent and intentional failures, failed to establish proper communications and exchange necessary and vital information with other police officers and incoming units; JLA; JLA's family; and the St. Joseph's Comprehensive Psychiatric Mobile Crisis Outreach Team who had been present on the scene; failed to properly de-escalate the situation; failed to establish a command post; failed to deploy/dispatch properly trained crisis intervention officers; failed to employ proper de-escalation techniques to defuse the situation; failed to employ/utilize body cameras; failed to establish a proper chain of command; failed to communicate with one-another to develop a viable and safe plan/objective; and failed to consider/read the dispatch information available to them.

## FIRST CAUSE OF ACTION:  ASSAULT

15.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 15 above of the Complaint as if stated with particularity herein.

16.     Defendant, Trooper Fike engaged in physical conduct by using unreasonable and excessive force against JLA; to wit:  the said Defendant repeatedly discharged his service weapon at JLA which placed JLA in imminent apprehension of harmful contact.

17.     Plaintiff pleads the doctrine of *res ipsa loquitur*.

18.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, Defendant, Trooper Fike, was the agent and employee of the State of New York, and in doing the things alleged in this Complaint was acting within the course and scope of that agency and employment.  As such, The State of New York is vicariously liable for the acts of Trooper Fike.

19.    As a result of the proximate actions of Defendant, as herein alleged, JLA suffered pain, suffering, degradation and humiliation, permanent physical injuries, including wrongful death.    As a further direct and proximate result of Defendant's negligence, Decedent, after experiencing significant conscious pain and suffering, ultimately died from injuries inflicted upon him after being repeatedly shot by Defendant.    Decedent is survived by family members, who are beneficiaries to the Estate and this action.    As a direct and proximate result of the Defendant's negligence, having caused the wrongful death of JLA and/or the loss of his chance for survival, the above beneficiary and heirs at law suffered and will continue to suffer damages, including but not limited to the following: loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by JLA's surviving family.

20.    In perpetrating the assault, as set forth herein, Trooper Fike acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages as against the Defendant.

## SECOND CAUSE OF ACTION: BATTERY

21.    Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 21 above of the Verified Complaint as if stated with particularity herein.

22.    Trooper Fike engaged in bodily contact with JLA by brutally and repeatedly discharging his police weapon at JLA, which bullets struck JLA multiple times about his body thereby, using unreasonable and excessive force against JLA, with the intent to cause JLA serious and grievous bodily injury.    The bodily contact was without permission of JLA and was offensive in nature to JLA ultimately causing his death.

5

23.     Plaintiff hereby pleads the doctrine of *res ipsa loquitur*.

24.     As a result of the actions of Defendant, as herein alleged, JLA suffered pain, suffering, degradation and humiliation, permanent physical injuries, including wrongful death. As a further direct and proximate result of Defendant's negligence, Decedent, after experiencing significant conscious pain and suffering, ultimately died from injuries inflicted upon him after being repeatedly shot by Defendant.  Decedent is survived by family members, who are beneficiaries to the Estate and this action.  As a direct and proximate result of the Defendant's negligence, having caused the wrongful death of JLA and/or the loss of his chance for survival, the above beneficiary and heirs at law suffered and will continue to suffer damages, including but not limited to the following:  loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by JLA's surviving family.

25.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, Defendant, Trooper Fike, was the agent and employee of the State of New York, and in doing the things alleged in this Complaint was acting within the course and scope of that agency and employment.  As such, The State of New York is vicariously liable for the acts of Trooper Fike.

26.     In perpetrating the assault, as set forth herein, Trooper Fike acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages as against the Defendant.

## THIRD CAUSE OF ACTION:  WRONGFUL DEATH

27.    Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 27 above of the Complaint as if stated with particularity herein.

28.    As a direct and proximate result of the wrongful and negligent conduct of Defendant, JLA was repeatedly shot by police gunfire. As a direct and proximate result of Defendant's negligence, JLA, after experiencing significant conscious pain and suffering, ultimately died from those injuries. Upon information and belief, Defendant would have been liable to JLA for the negligent gruesome injuries caused to him had JLA's death not ensued; to wit: Defendant's negligent wrongful conduct, as herein alleged, gave rise to this wrongful death cause of action, along with the other several causes of action alleged in this Complaint, all of which causes of action could have been maintained, at the moment of death, by the Decedent if death had not ensued.

29.    As a result of JLA's death, the Estate and it's numerous surviving distributes have suffered damages including medical and funeral expenses due to the Decedent's injury and death that have become a charge against his Estate or were paid on behalf of the Decedent and loss of the prospective net accumulations of the Estate, which might reasonably have been expected but for the wrongful death, reduced to present money value.

30.    Each of JLA's several surviving family members/distributes, have lost the parental companionship, instruction, and guidance of JLA and has sustained damages for mental pain and suffering as a result of the loss of JLA's life. The Estate and several of JLA's surviving family members/distributes have lost the prospective net accumulations, which might reasonably have been expected but for the wrongful death; and the Estate and survivors are entitled to all other damages as allowed by law, including, but not limited to loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of

7

Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education suffered by the next-of-kin; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by the surviving next-of-kin.

31.     On or about January 31, 2022, the Surrogate's Court of the State of New York, County of Onondaga, issued Letters and a Certificate of Appointment of Administrator, naming Mr. Loft Albahm, as Administrator of the Estate of JLA L. Albahm.  True and correct copies of the Certificate of Appointment and Letters are attached hereto as Exhibit A.

## FOURTH CAUSE OF ACTION: IIED

32.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 32 above of the Verified Complaint as if stated with particularity herein.

33.     The actions of Defendant Trooper Fike in failing to take operational control of this incident in violation of NYS Police policies and procedures, and in brutally assaulting JLA causing him grievous bodily injury without the permission or consent of JLA while, in fact, acting in the capacity of a police officer charged with serving, protecting, and ensuring the well-being and welfare of the public and the community at large, of which JLA was a member, constitutes extreme and outrageous conduct.

34.     The actions of Defendant, as set forth above, intended to cause and disregarded the substantial probability of causing severe emotional distress to JLA.

35.     The actions of Defendant, as set forth herein, were the sole competent and producing actual and proximate cause of Plaintiff's damages.

36.     As a result of the actions of Defendant, as herein alleged, JLA suffered pain, suffering, degradation and humiliation, permanent physical injuries, including wrongful death.  As

8

a further direct and proximate result of Defendant's negligence, Decedent, after experiencing significant conscious pain and suffering, ultimately died from injuries inflicted upon him after being repeatedly shot by Defendant. Decedent is survived by family members, who are beneficiaries to the Estate and this action. As a direct and proximate result of the Defendant's negligence, having caused the wrongful death of JLA and/or the loss of his chance for survival, the above beneficiary and heirs at law suffered and will continue to suffer damages, including but not limited to the following: loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by JLA's surviving family.

37.    By intentionally inflicting emotional distress upon JLA, as set forth herein, Defendant, acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages against the said individual Defendant.

## FIFTH CAUSE OF ACTION: NIED

38.    Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 39 above of the Complaint as if stated with particularity herein.

39.    Defendant, as a police officers in the community where JLA resided, owed JLA a duty to safeguard and ensure his safety and well-being.

40.    Defendant breached said duty to JLA by brutally assaulting him with bullets discharged from his firearm and by repeatedly failing to follow NYS Police policies and procedures, all without the permission or consent of JLA.

9

41.    Defendant further breached said duty to JLA by failing to assume operational control of the incident, and by repeatedly failing to follow NYS Police policies and procedures, all without the permission or consent of JLA.

42.    The actions of Defendant exposed JLA to an unreasonable risk of bodily injury and unreasonably endangered his physical safety and caused him to fear for his safety and were the sole competent and producing actual and proximate cause of JLA's injury and damages.

43.    As a result of the actions of Defendant, as herein alleged, JLA suffered pain, suffering, degradation and humiliation, permanent physical injuries, including wrongful death. As a further direct and proximate result of Defendant's negligence, Decedent, after experiencing significant conscious pain and suffering, ultimately died from injuries inflicted upon him after being repeatedly shot by Defendants. Decedent is survived by family members, who are beneficiaries to the Estate and this action. As a direct and proximate result of the Defendant's negligence, having caused the wrongful death of JLA and/or the loss of his chance for survival, the above beneficiary and heirs at law suffered and will continue to suffer damages, including but not limited to the following: loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by JLA's surviving family.

44.    By negligently inflicting emotional distress upon JLA, as set forth herein, Defendant acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages against the said Defendant.

## SIXTH CAUSE OF ACTION: NEGLIGENCE

10

45.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 46 above of the Complaint as if stated with particularity herein.

46.     Defendant, Trooper Fike had a duty to the public at large, including JLA, to properly follow police procedure, including, but not limited to, policies and procedures contained within the NYS Police Members Manual and FOG.

47.     At all material times herein, the foregoing Defendant breached his aforesaid duty of care by carelessly and negligently failing to properly follow police procedure, including, but not limited to, policies and procedures contained within the NYS Police Members Manual and FOG.

48.     Defendant, knew or should have known that he were not properly following police procedure, including, but not limited to, policies and procedures contained within the NYS Police Members Manual and FOG, all of which policies and procedures are necessary to ensure JLA's well-being and safety.

49.     Defendant's failure to follow the rules and procedures as contained within the NYS Police Members Manual and FOG were both the actual and proximate cause of the injuries suffered by JLA.

50.     As a result of the actions of Defendant, as herein alleged, JLA suffered pain, suffering, degradation and humiliation, permanent physical injuries, including wrongful death. As a further direct and proximate result of Defendant's negligence, Decedent, after experiencing significant conscious pain and suffering, ultimately died from injuries inflicted upon him after being repeatedly shot by Defendants.  Decedent is survived by family members, who are beneficiaries to the Estate and this action.  As a direct and proximate result of the Defendant's negligence, having caused the wrongful death of JLA and/or the loss of his chance for survival,

the above beneficiary and heirs at law suffered and will continue to suffer damages, including but not limited to the following: loss of support from the reasonably expected earning capacity of Decedent; loss of services of Decedent; loss of the society of Decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; loss of prospective inheritance to Decedent's heirs at law at the time of his death; and the mental anguish incurred by JLA's surviving family.

### SEVENTH CAUSE OF ACTION: EXCESSIVE USE OF FORCE 42 U.S.C. § 1983

51.     Plaintiff incorporates herein each and every allegation contained in Paragraphs 1 through 52 above of the Complaint as if stated with particularity herein.

52.     As set forth herein, JLA suffered severe and permanent personal injury when he was brutally shot and killed by gun fire at the hands of Trooper Fike.

53.     In killing JLA, Trooper Fike was acting in the course and scope of his employment as a police officer for the State of New York.

54.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, that Defendant, Trooper Fike was the agent and employee of the State of New York, a state actor, and in doing the things alleged in this Complaint was acting within the course and scope of that agency and employment. As such, the State of New York is vicariously liable for the grossly negligent acts of Trooper Fike.

55.     Trooper Fike used unreasonable, unnecessary, and excessive force during his attempted pursuit of JLA. Specifically, Trooper Fike, without cause, justification, or reason, brutally assaulted JLA by repeatedly discharging his police service weapon and striking JLA with bullets about his body, wrongfully causing his death as alleged herein.

12

56.     Trooper Fike's failure to follow policies and procedures contained within the NYS Police Members Manual and FOG resulted in an excessive and aggressive police response which precipitated in excessive force being used against JLA by Trooper Fike and the other responding officers, who brutally assaulted JLA by repeatedly discharging their police service weapons and striking JLA with bullets about his body, wrongfully causing his death as alleged herein.

57.     At the time the police encountered JLA, he had committed no crime or offense whatsoever.  Upon information and belief, prior to being shot and killed by Defendant, as herein alleged, JLA was a minor who had never before been convicted of any crime or Penal Law offense.

58.     The Fourth Amendment protects citizens against unreasonable search and seizure. The deadly force used against JLA by Defendant was unreasonable in light of the circumstances. Specifically, upon information and belief, Defendant was repeatedly, and personally advised that JLA only possessed an air soft BB gun.  Upon information and belief, Defendant failed to make a proper inquiry into JLA's mental health history prior to discharging his firearms at JLA. Moreover, at the time of his death, JLA had committed no crime or offense and was a seventeen (17) year old child with no record of any criminal history.  Despite the same, during the attempted detention of JLA, Defendant brutally shot and killed JLA without cause or justification in a specific effort to humiliate, degrade, and wrongfully impose their own rule of justice upon JLA.

59.     The unreasonable, unnecessary, and excessive force used by Defendant caused permanent substantial and material physical injury to JLA, including, wrongfully causing his death, as set forth herein.

60.     At the time of JLA's attempted detention by Defendant, as herein alleged, Defendant was acting under color of the laws and regulations of the United States and the State of New York.

13

61.    Upon information and belief, the State of New York had in place policies and/or customs, including, but not limited to, body cam regulations, that specifically enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals, including, JLA, in direct violation of the Fourth Amendment (to wit: the right guaranteed under the Fourth Amendment to be free from unreasonable search and seizure) and other amendments to the U.S. Constitution. Defendant acted willfully, deliberately, maliciously, or with reckless disregard for JLA's established Fourth Amendment and other constitutional rights.

62.    Upon information and belief, The State of New York had a policy and/or custom of tolerating misconduct by its police officers and encouraging misconduct by failing to adequately supervise, discipline, monitor, and train its police officers.

63.    By using excessive and unnecessary force, as set forth herein, Defendant acted with oppression, fraud, or malice, entitling the Estate to an award of punitive damages against the Defendant.

64.    Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b), and hereby makes a demand for the same.

65.    Plaintiff's damages exceed the jurisdiction of all lower courts.

66.    Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff asks for judgment against the Defendant for the following:

a.    Actual damages in an amount to be determined upon the jury trial of this action;

b.    Punitive damages in an amount to be determined upon the jury trial of this action;

c.    All attorney's fees and costs of this action;

d.    Prejudgment and post-judgment interest; and

e.    Such other and different relief that the Court deems just and appropriate.

October 2, 2024

Weisberg & Zukher, PLLC.
David E. Zukher, Esq.
Bar Roll No.: 510328
*Counsel for Plaintiff*
109 South Warren Street, Suite 711
Syracuse, NY 13202
Tel:    (315) 701-2939
Fax:    (315) 701-2938

15