**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ESTATE OF JLA,

                                    **Plaintiff,**

   **vs.**                                                    **5:22-CV-287**
                                                             **(MAD/MJK)**

COREY FIKE,

                                    **Defendant.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**WEISBERG & ZUKHER, PLLC**                   **DAVID E. ZUKHER, ESQ.**
109 South Warren Street, Suite 711            **KARLA R. PAVESE, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**              **RYAN P. KELEHER, ESQ.**
22 Corporate Woods Boulevard, Suite 501
Albany, New York 12211
Attorney for Defendant

**BOND, SCHOENECK & KING, PLLC**              **KARL DEUBLE, ESQ.**
350 Linden Oaks, Third Floor
Rochester, New York 14625
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 4, 2021, New York State Trooper Corey Fike ("Fike" or "Defendant") fatally

shot seventeen-year-old JLA, who was experiencing a mental health emergency, after the teen

pointed what looked like a Glock semiautomatic pistol at law enforcement officers. *See* Dkt. No.

94 at 3, 7. After JLA hurriedly left his home, his mother called 911, and Defendant was among

1

the responding officers. *See id.* at 3-4. Their objective was to stop JLA and help facilitate his transportation to a local hospital. *See id.* at 3. Although JLA's gun was later revealed to be a non-lethal pellet gun, it had no markings to distinguish it from a deadly firearm. *See id.* at 7. The Estate of JLA ("Estate" or "Plaintiff") sued Fike and numerous other Defendants in state court on February 28, 2022, and the action was removed to this Court on March 25, 2022. *See id.* at 2.

In April 2025, the parties cross-moved for summary judgment. *See id.* By then, Fike was the only remaining Defendant. *See id.* The claims against him were: (1) negligence; (2) Fourth Amendment excessive force; (3) assault; (4) battery; (5) wrongful death; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. *See id.* After a careful review of the record and the governing law, the Court granted summary judgment for Defendant on November 10, 2025. *See id.* at 15-26. The Court found that Defendant was entitled to qualified immunity on the Fourth Amendment claim. *See id.* at 17-21. Defendant also established, based on the undisputed material facts, entitlement to judgment as a matter of law on all other claims. *See id.* at 15-17, 21-25. Judgment was entered in Defendant's favor, and the case was closed that same day. *See* Dkt. No. 95.

On November 19, 2025, Plaintiff filed a motion for reconsideration. *See* Dkt. No. 98. Defendant opposed that motion on December 22, 2025, *see* Dkt. No. 103, and Plaintiff filed a reply on January 8, 2026, *see* Dkt. No. 104. Defendant also filed a motion for bill of costs, *see* Dkt. No. 102, which Plaintiff opposed, *see* Dkt. No. 105.

For the reasons stated below, Plaintiff's motion is denied, and Defendant's motion is granted in part.

## II. BACKGROUND

For a full recitation of the factual background, the parties are referred to this Court's November 10, 2025, Memorandum-Decision and Order.  *See* Dkt. No. 94.

## III. DISCUSSION

**A.    Plaintiff's Motion for Reconsideration**

This Court "recognizes only three possible grounds upon which motions for reconsideration may be granted[.]"  *Tomassini v. FCA US LLC*, No. 3:14-CV-1226, 2018 WL 5842995, *1 (N.D.N.Y. Nov. 8, 2018) (citations and internal quotation marks omitted); *see also* N.D.N.Y. L.R. 60.1.  Those grounds are: "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice."  *Tomassini*, 2018 WL 5842995, at *1 (citations and internal quotation marks omitted); *see Smith v. Dodge*, No. 9:18-CV-1066, 2026 WL 1601778, *2 (N.D.N.Y. June 4, 2026); *Bunnenberg v. Liberty Mut. Fire Ins. Co.*, No. 1:22-CV-1174, 2025 WL 264476, *10 (N.D.N.Y. Jan. 21, 2025).  This standard is strict, and "'reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *Smith*, 2026 WL 1601778, at *2 (quoting *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024)).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Plaintiff argues that the Court overlooked information "which would reasonably be expected to alter [its] conclusion . . . regarding Plaintiff's excessive force and negligence claims[.]"  Dkt. No. 98-2 at 4.  Specifically, Plaintiff contends that the Court wrongly focused exclusively on JLA's shooting and ignored the circumstances leading up to it, such as "Defendant

Fike's negligent mismanagement of the incident, reckless disregard for the safety of not only JLA, but other responding law enforcement officers on the scene, and violation of JLA's constitutional rights[.]" *Id.* at 5.  In response, Defendant argues that Plaintiff fails to raise "an intervening change in controlling law, new evidence not previously available, or a clear error of law, as is legally required to grant [a motion for reconsideration]."  Dkt. No. 103 at 5.

### 1. *Negligence Claim*

Plaintiff's negligence claim alleged that Defendant breached a duty to JLA by failing to follow New York State Police incident command procedures, which proximately caused "the injuries suffered by JLA."  Dkt. No. 75 at ¶¶ 45-50; *see* Dkt. No. 94 at 11.  The Court explained that to prevail on a negligence claim, a plaintiff must plead and prove a duty owed, a breach of that duty, and an injury proximately caused by the breach.  *See* Dkt. No. 94 at 12 (quoting *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (2023)).  The Court determined that, even if Plaintiff proved the duty and breach elements, the undisputed material facts left the causation element unsatisfied.  *See id.* at 12-17.  After extensive consideration of the factual record and governing law, the Court concluded that JLA's pointing of the gun at law enforcement officers proximately caused the shooting, rather than any potential negligence on Defendant's part.  *See id.*

Plaintiff does not challenge the Court's statement of the negligence elements, but it does take issue with the Court's decision that, as a legal matter, JLA's own conduct proximately caused the shooting.  *See* Dkt. No. 98-2 at 5-6.  Plaintiff argues that although the Court "rightly consider[ed] JLA raising his weapon at officers as intervening conduct resulting in the justified shooting of JLA[,]" the Court failed to consider how law enforcement officers' pursuit of JLA made it normal and foreseeable that he would point what looked like a deadly firearm at them.

4

*Id.*; *see Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987) ("[T]he defendant is liable in negligence only when the intervening acts are a normal and foreseeable consequence of defendant's conduct") (citations omitted).  Despite previously moving for judgment as a matter of law on the negligence claim, *see* Dkt. No. 79-16 at 16 ("[B]ased on the foregoing undisputed facts, Plaintiff is entitled to summary judgment on the issue of liability for the negligence sounding in wrongful death rendered by Defendant . . ."), Plaintiff now argues that it must go to a jury due to unresolved disputes of material fact, including: (1) whether Defendant's alleged failure to follow incident command procedures "contributed to the escalation of the situation"; (2) whether Defendant's failure to tell other officers "that JLA possessed an airsoft gun . . . could have influenced how the other officers approached the situation and potentially prevented the fatal shooting"; and (3) "whether proper de-escalation techniques were employed[,] given JLA's known mental health crisis[,]" Dkt. No. 98-2 at 9-10.  Plaintiff also contends that Defendant violated JLA's constitutional rights by following him on foot without arresting him, which made JLA's raising of the gun at the officers normal and foreseeable. *See id.* at 6-8.

This argument does not present an intervening change in controlling law, new evidence that was previously unavailable, or a clear error of law.  Instead, Plaintiff attempts to relitigate issues already decided by framing the facts differently.  At summary judgment, it was undisputed that JLA's mother asked law enforcement to find JLA so he could be transported to the hospital. *See* Dkt. No. 94 at 3.  The parties also did not dispute that Defendant and other officers spoke with JLA, told him they wanted to help, and asked him to drop his weapon. *See id.* at 5-7.  They agreed that a trained hostage negotiator tried to help calm JLA. *See id.* at 5.  It was also undisputed that Defendant and other officers followed JLA to a wooded area. *See id.* at 6-7.  At summary judgment, neither party represented that officers "cornered" JLA, as Plaintiff now

claims.  Dkt. No. 98-2 at 7; *see* Dkt. No. 79-1 at ¶ 20 (Plaintiff stating that JLA "encounter[ed]" law enforcement officers in the wooded area); Dkt. No. 85 at ¶ 20 (Defendant not disputing that fact); Dkt. No. 80-20 at ¶¶ 30-31 (Defendant stating that law enforcement officers "followed [JLA] into a wooded area"); Dkt. No. 86-3 at ¶¶ 30-31 (Plaintiff not disputing that fact).

Moreover, Plaintiff's reconsideration motion incorrectly states that the record showed Defendant had "complete knowledge of the circumstances," Dkt. No. 98-2 at 12, and knew the weapon in JLA's hand "was most likely an airsoft gun[,]" *id.* at 8; *see* Dkt. No. 104 at 9.  The parties agreed at summary judgment that JLA's mother told the 911 dispatcher he had threatened "suicide by cop" in the past, which dispatch relayed to responding officers, and that JLA owned airsoft guns.  Dkt. No. 94 at 4.  They did not dispute that JLA's mother told Defendant that JLA owned a BB, pellet, or airsoft gun, and, as the Court explained, she told dispatch she was unsure whether JLA had his pellet gun with him.  *See id.* at 4, 6.  The Court emphasized that, "although JLA's mother had informed Defendant that JLA owned an airsoft gun, Defendant had no way of knowing for certain that the weapon in JLA's hand was that airsoft gun."  *Id.* at 14-15.

Plaintiff argues that if Defendant had followed New York State Police incident command procedures, JLA would not have raised his gun, suffered harm, or died.  *See* Dkt. No. 98-2 at 7-9 ("But for Defendant failing to detain JLA, and leading JLA to believe he was free to leave while simultaneously orchestrating and leading an aggressive pursuit of JLA while following none of his own department's rules or procedures, JLA's intervening act[,] and the subsequent shooting resulting in the ultimate injury to JLA[,] does not occur").  However, as Defendant points out, this line of reasoning is "completely speculative" and does not fall within the three grounds for reconsideration.  Dkt. No. 103 at 10.

Plaintiff also invokes constitutional principles to argue that JLA's conduct was a normal and foreseeable result of Defendant's alleged negligence, and therefore not a superseding cause of the shooting.  Plaintiff cites *People v. Howard*, 50 N.Y.2d 583 (1980), for the proposition that JLA had a constitutional right to walk away from the officers, without being followed, after they told him he was not under arrest.  *See* Dkt. No. 98-2 at 6.  In *Howard*, the New York Court of Appeals stated that an individual has a constitutional right not to answer a question from a police officer and to "walk or run away."  *Howard*, 50 N.Y.2d at 586.  Relying on *Howard*, which was decided in 1980 and is far from an intervening change in controlling law, Plaintiff argues that Defendant should have either arrested JLA or let him walk away.  *See* Dkt. No. 98-2 at 7-8.  Importantly, the Supreme Court undermined *Howard* in 1991 by holding that an officer's on-foot pursuit of a suspect, prior to any physical apprehension, does not constitute a seizure under the Fourth Amendment.[1]  *See California v. Hodari D.*, 499 U.S. 621, 625-26 (1991); *see also People v. Holmes*, 181 A.D.2d 27, 30 (1st Dep't 1992) (explaining that, after *Hodari*, "pursuit is not a seizure within the meaning of the federal [C]onstitution").

Plaintiff asserts that Defendant violated JLA's constitutional rights by following him without arresting him, and because of that violation, it became normal and foreseeable that JLA would point a weapon at the officers.  *See* Dkt. No. 98-2 at 5-8.  This argument rehashes issues already decided at summary judgment.  Again, the Court held that JLA's pointing what looked like a deadly weapon at law enforcement officers trying to help him was the proximate cause of the shooting and superseded any potentially negligent conduct by Defendant.  *See* Dkt. No. 94 at

---

[1] With respect to Plaintiff's constitutional claim, the amended complaint references 42 U.S.C. § 1983 and the Fourth Amendment to the federal Constitution.  *See* Dkt. No. 75 at ¶¶ 51-63.  The Court has not construed that claim to arise under New York's state constitution, and Plaintiff has not argued such.

12-17.  Contrary to Plaintiff's assertion that the Court "look[ed] only to the actual shooting" and failed to "consider the prior violations of JLA's constitutional rights which made JLA's intervening act foreseeable[,]" Dkt. No. 98-2 at 5-6, the Court carefully considered the totality of the circumstances, *see* Dkt. No. 94 at 14 ("[T]he record evidence does not show that strict adherence to the Members Manual or Field Operations Guide would have prevented JLA from raising his gun and subsequently being shot. . . .  The record evidence does show that Defendant discharged his service weapon only after JLA raised his weapon").

Finally, the Court previously noted that even if Plaintiff's negligence claim could be meritorious, he was "likely entitled to immunity under New York's Mental Hygiene Law." *Id.* at 17.  To overcome the immunity, Plaintiff would need to show that Defendant acted with gross negligence.  *See id.* (quoting N.Y. MENTAL HYG. LAW § 9.59).  Plaintiff did not make that showing at summary judgment, yet now tries to reuse its earlier allegations to argue that Defendant acted with gross negligence.  *See* Dkt. No. 104 at 7 ("Defendant Fike admits . . . he made an intentional decision to not provide vital information to any other officer on scene[.] . . . This alone has been previously alleged and is not novel as to gross negligence").  As the Court has emphasized, relitigating issues already decided is inappropriate in a motion for reconsideration.

Because Plaintiff has failed to raise any change in controlling law, newly discovered evidence, or clear error of law, its motion is denied as to the negligence claim.

### 2. *Excessive Force Claim*

As for the Fourth Amendment excessive force claim, Plaintiff argues that the Court "[did] not consider the violations of JLA's constitutional rights in the pursuit of JLA and the management of the incident in Defendant Fike utterly failing to abide by any of his department rules and regulations for such incidents[.]"  Dkt. No. 98-2 at 10-11.  Plaintiff asserts that JLA had

8

a "clearly established constitutional right" to walk away from Defendant, the Court considered only the actual shooting in deciding this claim, and the Court failed to consider "the clear violation of JLA's [F]ourth [A]mendment rights in continued pursuit of JLA after [Defendant] advis[ed] JLA that he was not under arrest." *Id.* at 11.  Defendant argues that Plaintiff improperly rehashes already-decided issues and that JLA did not have a clearly established constitutional right to walk away from Defendant.  *See* Dkt. No. 103 at 14-15.  In its reply, Plaintiff cites *Barnes v. Felix*, 605 U.S. 73 (2025), for the proposition that the Court must consider the totality of the circumstances, not just the moment of the shooting, in determining whether Defendant's use of force was legally reasonable.  *See* Dkt. No. 104 at 5-6.

The Supreme Court decided *Barnes* shortly after the parties filed their summary judgment motions, but before those motions were fully briefed.  Plaintiff is correct that *Barnes* requires courts to consider Fourth Amendment excessive force claims under the "totality of the circumstances," rather than just the precise moment of the alleged use of excessive force.  *See id.* at 6; *Barnes*, 605 U.S. at 79-81.  In *Barnes*, the Supreme Court recognized its prior jurisprudence, which remains good law, that calls for an "objective reasonableness" analysis of alleged excessive force under the Fourth Amendment.  *Barnes*, 605 U.S. at 76 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  That "objective reasonableness" analysis requires examination of the totality of the circumstances "from 'the perspective of a reasonable officer on the scene[.]'"  *Barnes*, 605 U.S. at 76, 79 (quoting *Graham*, 490 U.S. at 396).  The Court's November 2025 Memorandum-Decision and Order does not expressly mention *Barnes*, which repudiated the "moment-of-threat" doctrine used in the Fifth Circuit, because the totality standard adopted in *Barnes* "was already a well-established standard in the Second Circuit before *Barnes* arrived."  *DeGroat v. Buck*, No. 3:22-CV-507, 2026 WL

9

836311, *9 (N.D.N.Y. Mar. 26, 2026) (citing *Singh v. City of New York*, No. 23-CV-24, 2024 WL 319117, *3 (2d Cir. Jan. 29, 2024)).

The totality framework also informs whether qualified immunity is available, and Plaintiff does not contest this Court's explication of the qualified immunity standard:

> Ultimately, "[a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."

Dkt. No. 94 at 18-19 (quoting *Frantz v. City of Oswego*, No. 5:15-CV-1192, 2017 WL 4737258, *3 (N.D.N.Y. Oct. 19, 2017)).  The Court held that Defendant acted reasonably under the circumstances and was entitled to qualified immunity on the Fourth Amendment claim.  *See id.* at 18-21.  Contrary to Plaintiff's claim that the Court ignored all but the precise moment of the shooting, the Court explicitly recognized "the importance of [considering] several factors" to determine reasonableness.  *Id.* at 20 (citation omitted).

Plaintiff is correct that *Barnes* invalidated the "moment-of-threat" doctrine as a significant limitation on the totality analysis, *see* Dkt. No. 104 at 5; *Barnes*, 605 U.S. at 76, 79, but the Court did not apply the moment-of-threat standard in deciding the summary judgment motions.  Rather, it considered the totality of the circumstances beyond just the moment of the shooting.  After summarizing the undisputed material facts in detail, including JLA's mental health treatment history, his mother's 911 call, her conversations with Defendant and the 911 dispatcher regarding JLA's ownership of a pellet gun, the use of a hostage negotiator, JLA's carrying of the pellet gun through a residential area and raising it at officers twice, officers' instructions to JLA to drop his weapon, and the pellet gun's extremely close resemblance to a deadly firearm, *see* Dkt. No. 94 at 2-8, the Court reached its decision by considering those facts together, *see id.* at 20-21 (noting

10

that JLA's pellet gun was visually indistinguishable from a deadly firearm and that, leading up to the shooting, officers repeatedly instructed JLA to drop his weapon and unsuccessfully tried to de-escalate the situation).  The shooting itself was a weighty factor in the Court's analysis, but contrary to what Plaintiff claims, it was not the only factor.

Moreover, pursuant to *Hodari*, Plaintiff's argument that Defendant violated a clearly established Fourth Amendment right by following JLA is meritless.  *See* Dkt. No. 98-2 at 11; *Hodari*, 499 U.S. at 625-26 ("Hodari contends (and we accept as true for purposes of this decision) that Pertoso's pursuit qualified as a 'show of authority' calling upon Hodari to halt.  The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.  We hold that it does not"); *see also Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 256-57 (N.D.N.Y. 2014) (rejecting the proposition that police officers' pursuit of an individual, without physically catching or stopping him, violated the Fourth Amendment).  In this regard, Plaintiff fails to identify a clear error of law by the Court.

Finally, Plaintiff attempts to invoke numerous material factual disputes to show that summary judgment for Defendant on the excessive force claim was improper, such as: (1) "whether . . . a reasonable officer in Defendant's position would have known that upon being informed he was not being detained, JLA believed he was free to leave without further pursuit"; (2) whether "using deadly force against a mentally ill teenager holding what the officer had reason to believe might be an airsoft gun violated the Fourth Amendment"; (3) "whether Defendant was actually engaged in 'taking into custody and transporting' JLA to a hospital at the time of the shooting"; (4) "whether Defendant's conduct rose to the level of gross negligence"; (5) "whether less lethal alternatives were available and whether Defendant considered such alternatives before

11

resorting to deadly force"; and (6) "whether the officers' approach to JLA, who was known to be in a mental health crisis, was reasonable under the circumstances." Dkt. No. 98-2 at 12-13. These purported disputes of fact are unavailing because they either: (1) raise questions of law, not fact, that do not preclude summary judgment; or (2) attempt to relitigate matters that Plaintiff already had the opportunity to brief at summary judgment.

Because Plaintiff fails to identify a change in controlling law that alters the Court's conclusion, availability of new evidence, or a clear error of law, its motion for reconsideration is denied as to the excessive force claim.

**B.      Defendant's Motion for Bill of Costs**

Defendant filed a motion for bill of costs on December 9, 2025, *see* Dkt. No. 102, and Plaintiff filed an opposition brief on January 8, 2026, *see* Dkt. No. 105. Plaintiff argues that Defendant's motion was prematurely filed because the reconsideration motion was pending at the time. *See id.* at 9. Plaintiff urges the Court to deny costs because it is indigent, and argues that awarding costs would create a chilling effect on similar litigation. *See id.* at 4-8.

Federal Rule of Civil Procedure 54(d)(1) states that "costs—other than attorney's fees— should be allowed to the prevailing party" unless the Court, a federal statute, or other rule directs otherwise. FED. R. CIV. P. 54(d)(1); *see Tomassini v. FCA US LLC*, No. 3:14-CV-1226, 2021 WL 1163628, *5 (N.D.N.Y. Mar. 26, 2021) (quoting *Sacco v. Daimler Chrysler Corp.*, No. 05-CV-1435, 2008 WL 2858652, *1 (N.D.N.Y. July 22, 2008)). "The costs that may be awarded to a prevailing party are listed in 28 U.S.C. § 1920." *Tomassini*, 2021 WL 1163628, at *5 (citation omitted). That provision permits a judge or federal court clerk to tax as costs, *inter alia*, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case[,] . . . [f]ees and disbursements for printing and witnesses[, and] [f]ees for exemplification and the costs

of making copies of any materials where the copies are necessarily obtained for use in the case[.]"

28 U.S.C. § 1920.  "Awarding costs to the prevailing party is the rule, not the exception, in civil

litigation."  *Tomassini*, 2021 WL 1163628, at *5 (citing *Whitfield v. Scully*, 241 F.3d 264, 270 (2d

Cir. 2001), *abrogated on other grounds*, *Bruce v. Samuels*, 577 U.S. 82 (2016)).  The losing party

bears the burden of showing that costs should not be imposed.  *See Cutie v. Sheehan*, No. 1:11-

CV-66, 2016 WL 3661395, *2 (N.D.N.Y. July 5, 2016) (quoting *Whitfield*, 241 F.3d at 270).

### 1.  *Premature Filing*

Plaintiff argues that "the bill of costs should be denied until after the court resolves the

pending motion to reconsider and the judgment becomes final."  Dkt. No. 105 at 12.  Because the

Court herein denies the motion for reconsideration for the reasons stated above, the Court

proceeds to the merits of the motion for bill of costs.

### 2.  *Merits*

#### a.  *Necessity of Transcripts*

Defendant seeks $6,119.67 to cover fees for deposition transcripts of fifteen witnesses.[2]

*See* Dkt. No. 102.  Plaintiff appears to concede that the transcripts were "necessarily obtained for

use in the case[,]" and Plaintiff does not contest the costs' legitimacy.  Dkt. No. 105 at 3 (stating

that "[t]he litigation involved extensive discovery, including numerous depositions[,]" and

affirming that "[t]he bill of costs is supported by detailed invoices itemizing transcript expenses

for multiple witnesses").

---

[2] Defendant initially failed to file an affidavit with its motion, which is required by this Court's Local Rules.  *See* N.D.N.Y. L.R. 54.1(a).  On June 30, 2026, the Court gave Defendant fourteen days to file the affidavit.  *See* Dkt. No. 108.  Defendant filed the affidavit on July 2, 2026.  *See* Dkt. No. 109.

The Court notes, however, that several of the transcripts listed in Defendant's motion were never filed.  Despite Plaintiff's apparent concession of necessity, Defendant must demonstrate that each transcript was "'necessarily obtained for use in the case[,]'" *Sacco*, 2008 WL 2858652, at *1 (quoting 28 U.S.C. § 1920(2)), which goes "'beyond the mere convenience of counsel[,]'" *id.* (quoting *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973)).  To this end, "[t]he Second Circuit distinguishes between transcripts submitted to the court and transcripts of interviews taken as part of a party's pre-trial investigation that were not submitted to the court."  *Cutie*, 2016 WL 3661395, at *3 (citing *Pierre v. City of New York*, No. 05-CV-5018, 2008 WL 1700441, *5 (E.D.N.Y. Apr. 9, 2008)); *see Whitfield*, 241 F.3d at 271.

Defendant seeks costs for the following individuals' depositions: (1) JLA's mother; (2) JLA's father; (3) Lucas Byron; (4) Matthew Menard; (5) Amy Bollinger; (6) Jerry Pace; (7) Stacey Wickes; (8) Edward Mason; (9) Daniel Pace; (10) Justin Hickok; (11) Christine Armstrong; (12) Vincent Ferrara; (13) Maria Gay; (14) Michael Pearl; and (15) Robert Faynor. *See* Dkt. No. 102-1 at 1.  The parties filed some of these transcripts (or excerpts therefrom) with their summary judgment submissions, but not all.  After reviewing the record, the Court finds that the depositions of Mason, Hickok, Armstrong, Ferrara, Gay, and Jerry Pace were never filed.  As a result, the Court did not consider those transcripts in deciding the summary judgment motions or at any other point.  Defendant has not otherwise demonstrated why those transcripts were "necessarily obtained for use in the case[,]" *Sacco*, 2008 WL 2858652, at *1, and the Court will not speculate about how they may have been used.  Also, an excerpt of Daniel Pace's transcript was only filed with one of Plaintiff's submissions, *see* Dkt. No. 86-1, and beyond a general statement of necessity in Defense counsel's affidavit, Defendant has not demonstrated how that transcript was necessary to present its case, *see* Dkt. No. 109 at ¶ 6.

The Court therefore deducts, based on Defendant's provided invoices, $1,155.[3]  *Cf.*

*Pachura v. Hegseth*, No. 6:21-CV-316, 2025 WL 2391689, *1 (N.D.N.Y. Aug. 18, 2025) (noting

that transcript costs were warranted where "[e]ach transcript was used in support of [the

d]efendant's motion for summary judgment"); *Mayanduenas v. Bigelow*, No. 9:18-CV-1161, 2024

WL 1345514, *2 (N.D.N.Y. Mar. 29, 2024) (deeming a deposition transcript "a necessary

expense" of trial preparation because it was on an exhibit list filed with the court).  After

subtracting that amount from $6,119.67, the amount originally sought, the total comes to

$4,964.67.

### b.  Plaintiff's Indigence

Plaintiff asks the Court to deny Defendant's motion, in whole or in part, primarily because

it is indigent.  *See* Dkt. No. 105 at 4-7.  In this Circuit, courts may consider a losing party's

financial hardship in determining whether to impose costs.  *See, e.g.*, *Cutie*, 2016 WL 3661395, at

*3 (citing *Whitfield*, 241 F.3d at 270); *Dash v. Montas*, No. 17-CV-515, 2020 WL 2198175, *1

(E.D.N.Y. May 6, 2020) (citation omitted).  A losing party claiming indigence "must also provide

evidence documenting [the] alleged indigency."  *Dash*, 2020 WL 2198175, at *1 (citing *Hogan v.*

*Novartis Pharms. Corp.*, 548 Fed. Appx. 672, 674 (2d Cir. 2013) (summary order)); *see Cutie*,

2016 WL 3661395, at *3; *Lind v. United States*, No. 1:20-CV-574, 2025 WL 438157, *2

(N.D.N.Y. Feb. 7, 2025).  "The decision to limit or deny costs based on indigency is entirely

within the district court's discretion."  *Zulu v. Barnhart*, No. 9:16-CV-1408, 2019 WL 4544420,

*1 (N.D.N.Y. Sept. 19, 2019) (citing *Whitfield*, 241 F.3d at 269, 274).

---

[3] $1,155 is the total of the following transcript costs: $252 (Jerry Pace), $185.50 (Mason), $189 (Daniel Pace), $133 (Hickok), $122.50 (Armstrong), $157.50 (Ferrara), and $115.50 (Gay).  *See* Dkt. No. 102-1 at 6-8.

According to Plaintiff's counsel, JLA's parents are the beneficiaries of his Estate. *See* Dkt. No. 105 at 6. Counsel states that JLA's father is "an immigrant [who] works at a low income job and rents the home in which he lives[,]" but does not provide any evidence of JLA's father's earnings or explain what he does for work. *Id.* Counsel represents that JLA's father "is [the] sole provider[] for [JLA's] teenage brother and sister" and that JLA's mother has not worked since her son's death. *Id.* Counsel also points to a significant financial disparity between the parties and asserts that, "[u]pon information and belief," the State of New York covered Defendant's litigation costs as his employer. *Id.* at 7. Plaintiff has been represented by counsel for the entirety of this litigation and did not apply for *in forma pauperis* status. Because Plaintiff provides no documentary evidence of its indigence, despite being represented by counsel, the Court finds its indigence argument unpersuasive. *See Lind*, 2025 WL 438157, at *2.

### c. Chilling Effect

Plaintiff additionally argues that imposing costs "could have a chilling effect on similar litigation by estates or individuals with limited means." Dkt. No. 105 at 7. Although Plaintiff does not cite any in-Circuit caselaw directly supporting denial of costs based on possible deterrence of similar future litigation, "costs may be denied because of . . . the public importance of the case[.]" *Whitfield*, 241 F.3d at 270; *see Moore v. Cnty. of Delaware*, 586 F.3d 219, 221-22 (2d Cir. 2009). Plaintiff is also correct that courts in the Ninth Circuit have denied costs due to a potential chilling effect on future litigation. *See* Dkt. No. 105 at 8; *see, e.g.*, *Davis v. Pinterest, Inc.*, No. 19-CV-7650, 2023 WL 8812871, *1-2 (N.D. Cal. Dec. 20, 2023); *Goolsby v. Cnty. of San Diego*, No. 3:17-CV-564, 2020 WL 6361876, *5 (S.D. Cal. Oct. 29, 2020). However, even district courts in the Ninth Circuit have rejected "chilling effect" arguments for sums comparable to and greater than the one owed here. *See Est. of Le Blanc v. City of Lindsay*, No. 04-CV-5971,

2007 WL 2900515, *3 (E.D. Cal. Sept. 28, 2007) (rejecting a "chilling effect" argument in a police shooting case and imposing costs of $8,460.21); *Dickerson v. City of Portland*, No. 3:19-CV-1126, 2021 WL 408091, *4 (D. Or. Feb. 5, 2021) (rejecting a "chilling effect" argument and permitting two bills of costs at $2,947.90 and $2,072.70); *Hoppman v. Liberty Mut. Ins. Co.*, No. 3:17-CV-402, 2018 WL 2432943, *3 (D. Or. May 30, 2018) (rejecting a "chilling effect" argument and imposing $4,695.20 in costs). Although the Court acknowledges the public importance of not dissuading families and estates in police shooting cases from pursuing legal action, it does not find occasion to reduce or deny costs based on a potential chilling effect in this instance.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for reconsideration (Dkt. No. 98) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for bill of costs (Dkt. No. 102) is **GRANTED in part** for a total of **$4,964.67**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 10, 2026
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

17